UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
CREDIT UNION ON-LINE, INC,          )
                                    )
         Plaintiff,                 )
                                    )   Civil Action No: 04-12176-GAO
         v.                         )
                                    )
OPEN SOLUTIONS INC.,                )
                                    )
         Defendant.                 )
_____)

**DEFENDANT OPEN SOLUTIONS, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR DISMISSAL OR TRANSFER
FOR IMPROPER VENUE**

**Introduction**

In this case, Plaintiff Credit Union On-Line, Inc. ("Plaintiff") has asserted a variety of claims seeking damages, as well as injunctive and declaratory relief against Defendant Open Solutions Inc. ("Open Solutions"). While the allegations set forth in the Complaint are remarkably unclear[1], they appear to be based upon a supposed breach of some unspecified obligations set forth in an agreement that was executed in Atlanta, Georgia in 1994.

On August 30, 2004, Open Solutions sent a notice to the Plaintiff complaining of Plaintiff's failure to comply with the terms of the agreement between the parties. In response, Plaintiff contacted Open Solutions and indicated that it was reviewing the notice and preparing a response. Seven days later, Plaintiff filed this lawsuit in Massachusetts state courts, seeking, inter alia, a declaratory judgment regarding Open

---

[1] Concurrent with this motion, Open Solutions has filed a Motion to Dismiss the Verified Complaint or, in the Alternative, for a More Definite Statement.

1

Solutions' prior assertions of a breach, as well as a myriad of vague and unspecified claims for damages and other injunctive relief.

But as the Plaintiff well knows, the agreement between the parties specifically requires that any disputes be addressed and resolved in Atlanta. Plaintiff's decision to file suit in Massachusetts is nothing more than a blatant example of a litigant sprinting to the courthouse to preempt the forum choice of its opposing party. This Court should not tolerate such conduct.

Because the parties have already selected the proper forum for the resolution of any disputes, and because the convenience of the witnesses and the interests of justice would also be served by enforcing that selection, Open Solutions respectfully requests that this case be dismissed for improper venue pursuant to 28 U.S.C. § 1406. In the alternative, and pursuant to 28 U.S.C. §§ 1406(a) and 1404(a), this case should be transferred to the United States District Court for the Northern District of Georgia, the federal court located in the district previously selected by the parties.

I

**BACKGROUND**

On August 29, 1994, Plaintiff signed a Standard In-House Agreement (the "Agreement") relating to the sale and licensing of certain computer equipment by FiTECH Systems, L.P., a limited partnership headquartered in Atlanta, Georgia. See Verified Complaint ("Complaint") at ¶ 4; see also Agreement (relevant portions attached hereto at Tab A). The Agreement was executed in Atlanta by Sanders N. Greer, FiTECH's then-President and General Partner and by Constance D. Boretti, Plaintiff's

President and Chief Executive Officer.  See id.; see also Affidavit of S. Mark Roberson ("Roberson Aff.") ¶ 4 (attached hereto at Tab B).

Paragraph 5.4 of the Agreement contains a choice-of-law provision, requiring that the Agreement "be governed by and construed in accordance with the laws of the State of Georgia."  See Agreement ¶ 5.4.  In addition, Section 5.5, which appears in Addendum 5 to the Agreement, contains a forum selection provision that states, in relevant part:

> (A)  Any controversy or claim, whether based on contract, statute, tort[,] fraud, misrepresentation or other legal theory, related directly or indirectly to this Agreement, or any of the Application Software or service, whenever brought, and whether between [Plaintiff] and FiTECH, or any of FiTECH's or [Plaintiff]'s employees, agents, or affiliated businesses, will be resolved by arbitration in accordance with the terms of this Section 5.5, except that FiTECH reserves the right to seek injunctive relief for a breach or threatened breach by [Plaintiff] of the Confidentiality provisions of Section 2.3 hereof or a breach or threatened breach of the provisions hereof of restricting and limiting Customer's use of the Application Software.  The Federal Arbitration Act, 9 U.S.C. Sections 1 to 15, not state law, will govern the arbitrability of all claims.
>
> (B)  A single arbitrator who is knowledgeable in business information and electronic data processing systems will conduct the arbitration under the current rules and supervision of the American Arbitration Association (AAA).  The arbitrator's decision and award will be final and binding and may be entered in any court with jurisdiction.  The arbitrator will not have authority to aware punitive or other non-compensatory damages to either party.  The arbitration will be held in Atlanta, Georgia.

See Agreement, Addendum 5 ¶ 5.5.  FiTECH reserved the right to assign its interest in the Agreement without any prior consent or approval by Plaintiff.  See Agreement ¶ 5.4.

Commencing in 1994, FiTECH regularly shipped computer equipment and software to Plaintiff from its headquarters in Atlanta, Georgia.  See Roberson Aff. ¶ 5.  In addition, FiTECH established a hotline to provide technical support from its Atlanta office to Plaintiff.  Id. ¶ 6.  Plaintiff's employees regularly traveled to Atlanta for training sessions, including technical seminars that were offered during the FiTECH Annual

3

Conference in Atlanta. Id. ¶ 7. In July 2003, Open Solutions purchased FiTECH and became its successor-in-interest to the Agreement. Id. ¶ 8.

On August 30, 2004, Thomas Tartaro, Open Solutions' Vice President and General Counsel, sent a letter to Ms. Boretti informing her that Plaintiff had breached the Agreement by, among other things, providing data processing services to customers outside of its agreed-upon territory and soliciting Open Solutions' customers without Open Solutions' prior consent. See Letter from Thomas Tartaro to Constance Boretti, dated August 30, 2004 (attached hereto at Tab C). On September 16, 2004, Ms. Boretti informed Mr. Tartaro that she had "forwarded the necessary information to my attorney to address a reply to you." See E-mail from Connie Boretti, dated September 16, 2004 (attached hereto at Tab D, pages 3-4). On September 17, 2004, Ms. Boretti sent another e-mail that "I have forwarded all the necessary agreements and correspondence to my attorney and he is in the process of reviewing it and will prepare a response to you. . . . Our intent is to resolve any and all issues as soon as possible, and then get on with business as usual." See E-mail from Connie Boretti to Thomas Tartaro, dated September 17, 2004 (attached hereto at Tab D, pages 1-2).

On September 24, 2004, one week after Ms. Boretti had assured Open Solutions that Plaintiff intended "to resolve" the issues between the companies, Plaintiff filed this lawsuit in Massachusetts state court seeking "declaratory and other relief as to specified acts or threats" allegedly committed or about to be committed by Open Solutions. See Complaint ¶ 3. In addition to making vague and contradictory allegations about Open Solutions' conduct and its obligations under the Agreement, the Complaint directly

addresses the issues raised by Open Solutions in the August 30, 2004 letter.  See e.g., Complaint ¶¶ 9-11.

## II

## **LEGAL STANDARD**

Where a case is filed in an improper venue, a district court may either dismiss the case outright or may, in lieu of dismissal, and "in the interests of justice," transfer that case "to any district or division in which it could have been brought."  See 28 U.S.C. § 1406(a).  In addition, any civil action may be transferred "to any other district or division where it might have been brought," even if the plaintiff's choice of venue was proper, where such a transfer would serve both "the interests of justice" and the "convenience of parties and witnesses."  See 28 U.S.C. § 1404(a).

In evaluating a motion to transfer venue, federal courts traditionally give considerable deference to a plaintiff's choice of forum.  See Outek Carribean Distributors, Inc. v. Echo, Inc., 206 F.Supp.2d 263, 266 (D. P.R. 2002).  No such deference attaches, however, when the parties have entered a contract containing a valid forum selection clause.  See id.  Moreover, a plaintiff's choice of forum is entitled to less deference where it appears the plaintiff initiated its lawsuit in an effort to forum shop.  See Davox Corp. v. Digital Sys. Int'l, Inc., 846 F. Supp. 144, 148 (D. Mass. 1993).

III

**ARGUMENT**

A.   **The Agreement Indicates that Georgia, not Massachusetts, is the Proper Forum for this Dispute.**

Federal courts routinely enforce forum selection clauses by invoking 28 U.S.C. § 1606(a) to dismiss or transfer cases.  See, e.g., D'Antuono v. CCH Computaz Systems, Inc., 570 F.Supp. 708, 710-11 (D. R.I. 1983) (valid forum selection clauses render other forums "improper" under 28 U.S.C. § 1406(a) rather than merely "inconvenient" under § 1404(a)) (relying, in part, on The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972)).

"[U]nder federal common law, forum selection clauses 'are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be "unreasonable" under the circumstances.'" D'Antuono, 570 F.Supp. at 711 (quoting Breman, 407 U.S. at 10).  To establish that the Agreement's forum selection clause is unreasonable, Plaintiff "must present evidence of fraud, undue influence, overweening bargaining power, or . . . serious inconvenience in litigating." Id. (citing Fireman's Fund American Insurance Companies v. Puerto Rican Forwarding Co., Inc., 492 F.2d 1294, 1297 (1st Cir. 1974)).  Under this test, Plaintiff's "burden in resisting the forum selection clause is a heavy one." Doe v. Seacamp Association, Inc., 276 F.Supp.2d 222, 225 (D. Mass 2003).  Relevant considerations include (1) the law governing the contract; (2) the place the contract was executed; (3) the place of performance; (4) the availability of remedies in the forum; (5) the public policy of the state in which the plaintiff has chosen to file; (6) the location of the parties, convenience of prospective witnesses, and the accessibility of evidence; (7) the relative bargaining power of the parties; (8) the presence

6

of absence of fraud, undue influence, or other such circumstances; and (9) the conduct of the parties.  See D'Antuono, 570 F.Supp. at 712.

Here, it was perfectly reasonable for the parties to designate Atlanta as the appropriate and exclusive forum to resolve any disputes.  Georgia law governed the contract, making Georgia the logical place to enforce it.  See Agreement at Section 5.4.  The Agreement was executed at the Atlanta headquarters of FiTECH, Open Solutions' predecessor-in-interest.  See Roberson Aff. ¶¶ 2, 4, 8.  And although the Agreement contemplated that Plaintiff would operate in several states, the products at issue are manufactured in and shipped from Atlanta, technical support is provided from Atlanta via a telephone hotline, and Plaintiff's employees have visited Atlanta at least once a year to receive training on issues relating to Open Solution's products.  See id. ¶¶ 5-7.  Moreover, over the last ten years, FiTECH has performed and continues to perform programming and consulting services for Plaintiff from Atlanta.  It was thus perfectly rational for the parties to ensure that any disputes arising out of that Agreement would be resolved in Atlanta.[2]

The fact that FiTECH (and later Open Solutions' FiTECH division) has been based in Atlanta throughout the ten years that the parties have been performing the

---

[2] To be sure, the Agreement contemplates that proceedings in Atlanta will involve arbitration under the Federal Arbitration Act, 9 U.S.C.§ 1, et seq.  See Agreement at Section 5.5.  But the selection of Atlanta as the location for any arbitration plainly reflects a decision among the parties to ensure that any disputes are resolved in that location.  Moreover, to the extent any party to this dispute elects to pursue arbitration, only a court located in Atlanta would have the authority to address such a request. See Cashman Equipment Corp. v.Kimmins Contracting Corp., 2004 WL 32961 (D. Mass. (Jan. 5, 2004)) (explaining that "[w]hen the agreement to arbitrate includes a forum selection clause, most courts have concluded that only a district court in that forum has jurisdiction to compel arbitration.") (quoting St. Paul Fire & Marine Ins. Co., 270 F.3d 621, 624 (8th Cir. 2001) (internal quotation marks omitted).

Agreement also shows that Atlanta is plainly more convenient for witnesses and will provide greater ease of access to sources of proof relevant to Plaintiff's claims. The vast majority of FiTECH/Open Solutions employees who have worked on the Agreement are based in Atlanta. Id. ¶ 9. To give but one example, Sanders Greer, FiTECH's former President and signatory to the Agreement, lives in Atlanta. Id. ¶¶ 4, 9. But Mr. Greer is not a party to this litigation, so he cannot be compelled to appear in Massachusetts. See Fed. R. Civ. P. 45(b)(2). Nor can any of FiTECH's other former employees be forced to appear here. Id.

Conversely, there is nothing to suggest the Agreement was obtained by fraud, undue influence, overweening power, or anything other than the typical arms-length transaction. Both parties were commercial entities who apparently felt sufficiently strongly about the forum selection clause that they took the affirmative step of adding it to the Agreement in a separate Addendum. See Agreement, Addendum 5, ¶ 5.5. Indeed, Plaintiff cannot possibly contend that the Agreement was somehow procured by fraud in light of the fact that it has requested the extraordinary relief of an injunction requiring Open Solutions to continue performing the Agreement. See Complaint ¶¶ 14-16. The forum selection clause – like the Agreement itself – is valid and enforceable. In light of the parties' expressed intent that all disputes between them be resolved in Atlanta, and the reasonableness of that intent in light of all the circumstances, this Court should enforce the Agreement's forum selection clause and dismiss this action pursuant to its power under 28 U.S.C. § 1406(a). At the very least, the Court should exercise its discretionary power under § 1406(a) and transfer this action the United States District

Court for the Northern District of Georgia, the location in where this action should have initially been brought.

### B. In the Alternative, this Case Should Be Transferred to the United States District Court for the Northern District of Georgia Under 28 U.S.C. § 1404(a).

Under 28 U.S.C.§ 1404(a), a district court may transfer any civil action to another district where it may have been brought "[f]or the convenience of the parties and witnesses, in the interests of justice." As with a § 1406(a) inquiry, analyzing a motion for transfer of venue under § 1404(a)'s "convenience" standard requires an individualized assessment of a variety of factors, including the conveniences of the parties and witnesses, the relative ease of access to sources of proof, and public-interest factors of systemic integrity and fairness. See Stewart Organization, Inc. v. Ricoh Organization, 487 U.S. 22, 30 (1988). Each of these factors militates in favor of transferring venue to the Northern District of Georgia. As demonstrated in Part A, *supra.*, requiring the parties to resolve their differences in Atlanta is far more convenient for the parties and the non-party witnesses in light of the fact that the Agreement was executed and substantially performed in Georgia and many witnesses are located in Georgia. See Roberson Aff. ¶¶ 3-7.

Moreover, through the Agreement's forum selection provision, Plaintiff has already chosen Atlanta as the proper venue for any dispute arising out of the Agreement. A forum selection clause is a "significant factor that figures centrally" in a § 1404(a) analysis, because such clauses represent the parties' expressed preference for that venue. See Stewart, 487 U.S. at 29. In light of the clear federal policy favoring forum selection clauses, federal courts should give such clauses "controlling weight in all but the most

9

exceptional cases." Id. at 33 (Kennedy, J., concurring). "[I]ndeed, by consenting to the inclusion of a forum designation in the contracts, the plaintiff, to the extent that such a covenant is valid in a particular case, has waived any consideration of his convenience." D'Antuono, Inc., 570 F.Supp. at 710-11 (D. R.I. 1983); see also Maxon Engineering, 34 F.Supp.2d at 100 (rejecting Puerto Rican plaintiff's claim that litigating in Pennsylvania is inconvenient "especially since the possibility of inconvenience was known and contemplated at the time of executing the Agreement"). Thus, there can be no serious argument that it would be unfair or even inconvenient to transfer Plaintiff's action to the forum it originally selected. Indeed, "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." Stewart, 487 U.S. at 33 (Kennedy, J., concurring).

Moreover, as the Complaint itself admits, the Agreement must be construed according to Georgia state law. See Complaint ¶ 31. A transfer to the Northern District of Georgia would therefore serve the public interest by ensuring that issues of Georgia law will be resolved in Georgia. See Van Dusen v. Barrack, 376 U.S. 612, 645 (1964). Alternatively, allowing this case to remain in Massachusetts would harm the interests in preventing forum shopping and encouraging parties to attempt in good faith to settle disputes. See, e.g., Davox Corp., 846 F. Supp. at 148 (granting defendant's motion to transfer lawsuit to Western District of Washington where plaintiff promised a response to letter alleging wrongdoing but instead filed suit "because it would be inappropriate to reward – and indeed abet – conduct which is inconsistent with the sound policy of promoting extra-judicial dispute resolution, and conservation of judicial resources"); see

also <u>Symbol Technologies, Inc. v. Quantum Associates, Inc.</u>, 2002 WL 225934 at *3 (D. Mass. (Jan. 30, 2002)).

  Here, Plaintiff's Complaint is nothing more than a preemptive maneuver to stop Open Solutions from exercising its rights under the Agreement – including its right to insist upon resolving any disputes in Atlanta – in response to Plaintiff's wrongful conduct. <u>See</u>, <u>e.g.</u>, Complaint ¶ 14 ("If Open declares breach and discontinues performance of the 1994 Agreement or is allowed to purport to declare customer licenses invalid, [Plaintiff] will be irreparably injured."); Complaint ¶ 23 (seeking declaratory judgment on whether Open Solutions is entitled to exercise its rights under the Agreement). Under these circumstances, the balance of equities necessarily tip in favor of a transfer. <u>See</u> <u>Symbol Technologies, Inc.</u>, 2002 WL 225934 at *3 (disapproving of plaintiffs using the Declaratory Judgment Act "to gain a procedural advantage and preempt the forum choice of the plaintiff in the coercive action") (citation omitted).

  More astonishingly, Plaintiff's rush to the courthouse was preceded by what appears to have been an attempt to mislead Open Solutions into believing Plaintiff was actually interested in resolving the parties' dispute amicably, while instead using the time to prepare its own eight-count Complaint. As explained above, one week before filing the instant lawsuit, Ms. Boretti wrote to Open Solution's Vice President and General Counsel that she had "forwarded all the necessary agreements and correspondence to my attorney and he is in the process of reviewing it and will prepare a response to you. . . . Our intent is to resolve any and all issues as soon as possible, and then get on with business as usual." Open Solutions accepted Ms. Boretti's representations and attempted in good faith to investigate and resolve the parties' issues. <u>See</u> E-mail from Thomas

11

Tartaro to Connie Boretti, dated September 22, 2004 (attached hereto at Tab D, page 1). Less than two days after receiving this status report and request for additional information, Plaintiff filed its Complaint, which was signed and verified by Ms. Boretti herself.

Litigation by ambush has long been frowned upon by our court system, and particularly so when parties ambush those who are actively attempting to resolve disputes without going to court.  <u>Symbol Technologies</u>, 2002 WL 225934 at *3;  <u>Davox</u>, 846 F. Supp. at 148.  Plaintiff's conduct, when combined with the conveniences of the parties and the valid forum selection clause reflected in the Agreement, requires that this matter be transferred to the Northern District of Georgia.

## IV

## **CONCLUSION**

For all of the foregoing reasons, Open Solutions respectfully requests that this Court dismiss this lawsuit for improper venue.  In the alternative, Open Solutions requests that this Court issue and Order transferring this lawsuit to the United States District Court for the Northern District of Georgia.

Respectfully submitted,

_____/s/_____
Daniel J. Cloherty (BBO No. 565772)
Sara E. Noonan (BBO No. 645293)
DWYER & COLLORA, LLP
600 Atlantic Avenue
Boston, MA 02210-2211
(617) 371-1000

*Attorneys for Open Solutions Inc.*

Dated: October 22, 2004