3.15

FiTECH Systems

# STANDARD IN-HOUSE AGREEMENT

*CREDIT UNION ON-LINE, INC.*
*Waltham, MA*

Atlanta Division:
3098 Piedmont Road, N.E.
Suite 400
Atlanta, Georgia 30305

Greensboro Division:
706 Green Valley Road
Greensboro, NC 27408


FiTECH SYSTEMS

404MG10

## FITECH STANDARD AGREEMENT
### Credit Union On-Line, Inc.

FiTECH Systems, L.P. ("FiTECH"), a Georgia limited partnership, and the Customer whose name appears above ("Customer") agree that all Products, Application Software, and services to be provided by FiTECH to Customer hereunder shall be furnished only under the terms and conditions of this Agreement. The terms of this Agreement shall control notwithstanding any contrary provision of any purchase order used by Customer to effect the furnishing of any Products, Application Software, and services. This Agreement shall be effective only when executed by Customer and accepted in writing by an authorized officer of FiTECH at its offices in Atlanta, Georgia or Greensboro, North Carolina. Notice of acceptance is waived. Customer will be furnished a copy showing acceptance by FiTECH.

Customer: CREDIT UNION ON-LINE, INC.

By: _(signature)_
(Signature)

Constance D. Boretti
(Typed Name)

Title: President

Date: August 29, 1994

Accepted: FiTECH
By: FiTECH, Inc.
Its General Partner

By: _(signature)_
(Signature)

Sanders N. Greer
(Typed Name)

Title: President

Date: 8/29/94

Schedules and Addenda Attached (apply if box checked): Please acknowledge receipt of each Schedule and Addendum attached by initialing each page of the Schedule and Addenda and also initialing below:

| | | |
|---|---|---|
| [ X ] Schedule A | Products & System Software Continuation | CDB |
| [ X ] Schedule B | Application Software Continuation | CDB |
| [ X ] Schedule C | Installation, Training & Conversion Services | CDB |
| [ X ] Schedule D | Data Center Processing Services | CDB |
| [ X ] Addendum 1 | Multi Credit Union Processing | CDB |
| [ X ] Addendum 2 | Multi Credit Union Monthly License Fees | CDB |
| [ X ] Addendum 3 | Upgrades of CPU | CDB |
| [ X ] Addendum 4 | Description of Licensed Materials | CDB |
| [ X ] Addendum 5 | Additional Terms & Conditions | CDB |
| [ X ] Exhibit A | Confidentiality Agreement | CDB |
| [ X ] Exhibit B | Source Code Addendum | CDB |
| [ X ] Exhibit C | Deferred MANAGER™ Custom Software Modifications | CDB |

THE TERMS AND CONDITIONS ON THE SUBSEQUENT PAGES ARE PART OF THIS AGREEMENT.

OFFER VALID THROUGH: August 29, 1994

# FITECH STANDARD AGREEMENT
## Credit Union On-Line, Inc.

## PART 1. SALE OF EQUIPMENT AND LICENSE OF RELATED SOFTWARE

### 1.1 DEFINITIONS

As used herein:

(a) "Mainframe Equipment" means the specific model of any central processing unit and its associated equipment and the specific model of any file server and associated equipment listed in Schedule A hereto;

(b) "Manufacturer" means the manufacturer of the Products or System Software, as the case may be, designated in Schedule A hereto;

(c) "Micro Equipment" means the specific model of any personal computer and associated equipment listed in Schedule A hereto;

(d) "Products" means Mainframe Equipment, Micro Equipment, or both as applicable;

(e) "System" means Mainframe Equipment and its System Software, collectively, Micro Equipment and its System Software, collectively, or both as applicable; and

(f) "System Software" means the system software specifically listed in Schedule A, including all documentation relating to such software and provided to Customer pursuant to this Agreement, but does not include the Licensed Programs (as defined below).

### 1.2 ORDER

The Customer agrees to purchase the Products and license the System Software and FITECH agrees to sell the Products and license the System Software subject to the terms and conditions set forth herein.

### 1.3 IDENTIFICATION, DELIVERY AND RISK OF LOSS

Identification of the Products shall occur at the moment this Agreement is accepted by FITECH or as soon thereafter as the Products are identifiable. Unless otherwise designated in Schedule A hereto, Mainframe Equipment is sold F.O.B. Manufacturer's plant and Micro Equipment is sold F.O.B. FITECH's facility, and the Purchase Price of the Products does not include the cost of freight or insurance against loss or damage in transit. FITECH shall arrange with Manufacturer for shipment of Mainframe Equipment and FITECH shall arrange for shipment of Micro Equipment to Customer and invoice Customer for all freight and other transportation charges and the cost of insuring the Products against damage or loss in transit. Products shall be deemed tendered and risk of loss shall pass to Customer upon delivery of the Products to the common carrier. FITECH shall have the absolute right to deliver Products at one time or in portions from time to time. The delivery of a nonconforming Product, or a default of any nature, in relation to one or more installments of the Products shall not substantially impair the value of the Products as a whole, or this Agreement as a whole and shall not constitute a total breach of this Agreement as a whole.

### 1.4 ACCEPTANCE

Acceptance of the Products ("Acceptance") shall occur with respect to Mainframe Equipment, upon the certification of the operability of the Mainframe Equipment by authorized personnel of Manufacturer at Customer's Facility in accordance with Manufacturer's standard operating procedure, and in the case of Micro Equipment, upon delivery to Customer's Facility and installation by personnel authorized by FITECH. Acceptance of System Software shall occur upon acceptance of the Products. Customer shall have no right to revoke acceptance of the Systems.

### 1.5 SYSTEM SOFTWARE LICENSE

The System Software is the property of its respective Manufacturer and is licensed to Customer pursuant to a separate license agreement between Customer and such Manufacturer unless otherwise stated herein.

### 1.6 INSTALLATION

Installation services for the Products are to be provided by FITECH only if specified in Schedule A, and if specified, at the charges indicated in Schedule A, as and to the extent specified in Schedule C hereto. If no such installation services are specified, then all installation with respect to the Products, and all arrangements therefore shall be the responsibility of the Customer. In no event shall FITECH be responsible for maintenance of the Products, and no maintenance services are to be provided hereunder by FITECH with respect to the Products.

### 1.7 WARRANTY

Customer acknowledges and agrees that the Products purchased and the System Software licensed hereunder have purchased and licensed by FITECH from various Manufacturers for resale or sub-license, as applicable, to Customer and all warranties, if any, other than warranty of title to the Products, including, without limitation, warranties with respect to title to the System Software, materials, workmanship, Product capability and patent rights, are made by such Manufacturers and not by FITECH and that Customer will look solely to such Manufacturers for any remedies under such warranties.

FITECH MAKES NO WARRANTIES TO CUSTOMER WITH RESPECT TO THE SYSTEMS OTHER THAN WARRANTY OF TITLE TO THE PRODUCTS AND SUCH WARRANTY IS MADE EXPRESSLY IN LIEU OF ANY AND ALL EXPRESS OR IMPLIED WARRANTIES TO CUSTOMER, INCLUDING, WITHOUT LIMITATION, ANY AND ALL IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, OR NONINFRINGEMENT AND ALL SUCH OTHER WARRANTIES ARE HEREBY EXPRESSLY DISCLAIMED.

### 1.8 COLLATERAL DOCUMENTS AND SECURITY INTEREST

(a) Customer hereby grants and transfers to FITECH a purchase money security interest in and a security title to each System to secure payment by Customer of the unpaid portion of the Purchase Price, and such security interest and title shall attach to the Systems and be enforceable at the earliest time permitted by law.

(b) If requested by FITECH, Customer agrees to execute and deliver to FITECH any financing statements FITECH deems appropriate to perfect and facilitate enforcement of the security interest and title described in this Section 1.8.

(c) If requested by FITECH, Customer agrees to execute and deliver to FITECH a security agreement and such other documents (in such form as FITECH may direct) as FITECH deems appropriate to further evidence and perfect and facilitate enforcement of the security interest and title described in Section 1.8.

(d) In the event of a default in payment of the Purchase Price of a System, or any portion of such price, pursuant to the terms herein, Customer agrees that FITECH shall have the right to take possession of such System pursuant to applicable law and, to the extent permitted by applicable law, Customer specifically waives any and all rights it may have to any notice of the posting of a bond by FITECH prior to seizure by FITECH of the System, or any portion thereof. In that event, Customer also agrees to assemble the System and make it available to FITECH for pickup at a place to be designated by FITECH.

## PART 2. LICENSE OF APPLICATION SOFTWARE

### 2.1 DEFINITIONS

As used herein:

(a) "Application Software" means the Licensed Programs, the Other Software, and the Licensed Materials, and all portions and components thereof, and all copies and partial copies thereof.

(b) "Customer's Equipment" means all Products designated in Schedule A

6

# FITECH STANDARD AGREEMENT
## Credit Union On-Line, Inc.

hereto. If the serial number(s) of the Customer's Equipment is (are) not available at the time of execution of this Agreement, Customer shall enter such number(s) in the space provided on the first page hereof as soon as such number(s) is (are) available and provided to Customer by FiTECH.

(c) "Licensed Materials" means any documentation relating to the Licensed Programs, including without limitation, flow charts, logic diagrams, program listings, operator and system administrator manuals, and all other printed materials related to the Licensed Programs.

(d) "Licensed Programs" means the FiTECH computer programs in object code, machine readable form, listed in Schedule B hereto, excluding System Software (as defined above) and Other Software (as defined below).

(e) "Other Software" means the application or other software not owned by FiTECH that is listed on Schedule B hereto, which FiTECH is authorized to license to Customer.

## 2.2 LICENSE

FiTECH grants to Customer, and Customer accepts, subject to and on the terms and conditions set forth below, a non-exclusive and non-transferable license to use the Application Software on Customer's Equipment (except as provided in Section 2.2(b) hereof) to process the data of Customer. Customer shall have no other right to possess, use, print, copy, or display the Application Software in whole or in part, or to process the data of any other institution, except that Customer may:

(a) copy the Licensed Programs, the Other Software, and those Licensed Materials furnished in machine readable form to provide sufficient copies (but not more than four copies) to support Customer's use of the Licensed Programs and the Other Software as authorized under this Agreement. Licensed Materials provided by FiTECH in printed form may not be copied or duplicated, and additional copies must be obtained under license from FiTECH at the charges then in effect and

(b) The Customer is authorized to transfer the license to and to use the Application Software on:

    (i) a backup machine when the Customer's Equipment or an associated unit required for use of the Licensed Programs or Other Software is temporarily inoperable until operable status is restored and processing on the backup machine is completed.

    (ii) another machine for assembly or compilation of the Licensed Programs or Licensed Materials if the designated machine and its associated units do not provide the configuration required for assembly or compilation; or

    (iii) the Customer's Equipment at a facility other than the Customer's Facility if the Customer's Equipment shall be moved to such other facility and Customer shall have notified FiTECH, in writing of the address of such facility not less than thirty (30) days prior to such move.

The license granted hereunder is a license authorizing Customer to use the Application Software only on Customer's Equipment, no transfer of title to or any other interest in the Application Software is effected hereunder.

## 2.3 CONFIDENTIALITY DISCLOSURE

The Application Software, and all copies thereof made by or furnished to Customer (including partial copies, translations, compilations, partial copies within modifications or merged works and updated works) are the property of FiTECH or its vendors; and all rights in patents or copyrights applicable thereto are and shall remain vested in FiTECH or its vendors. Customer acknowledges that the Application Software constitutes a valuable asset and trade secrets of FiTECH or its vendors. Accordingly, Customer shall:

(a) hold the Application Software and the terms of this Agreement in strict confidence;

(b) not, and shall instruct its agents and employees not to, sell, lease, assign, transfer, or otherwise make available the Application Software or the benefit thereof to others, without the prior written consent of FiTECH;

(c) not copy or duplicate by any means, in whole or in part, the Application Software or any documentation or other materials furnished to Customer by FiTECH with or as a part of the Application Software, except for copies necessary for Customer's own data processing operations and expressly permitted hereunder;

(d) not remove or permit to be removed from the Application Software any notice placed thereon by FiTECH indicating the confidential nature of, or the property right of FiTECH or its vendors in such item;

(e) reproduce and include FiTECH's or its vendors' copyright notice (in the form specified by FiTECH) on all copies, in any form, including partial copies, of the Application Software or any documentation or materials furnished to Customer by FiTECH with or as part of the Application Software;

(f) limit access to the Application Software to only those employees of Customer who need access to the Application Software for Customer's business, and, if requested by FiTECH, Customer shall require its employees to execute FiTECH's or its vendors' standard non-disclosure agreements; and

(g) not, and shall instruct its agents and employees not to, use any information, in tangible or intangible form, which has been or may be disclosed to its employees by FiTECH under or in connection with this Agreement for the purpose of creating, duplicating, or attempting to create, duplicate, or "reverse engineer" the Application Software, any documentation furnished with or included in the Application Software, or any computer programs which perform functions substantially similar to the functions performed by the Licensed Programs.

In the event Customer becomes aware that any person or entity (including without limitation, any employee of Customer) is taking or threatens to take any action which would violate any of the foregoing provisions were that person or entity a party to this Agreement, Customer shall promptly and fully advise FiTECH (with written confirmation as soon as practical thereafter) of all facts known to Customer concerning such action or threatened action. Customer shall not in any way aid, abet or encourage any such action or threatened action. Customer agrees to cooperate in all ways reasonably requested by FiTECH to prevent such action or threatened action, including, without limitation, instituting or permitting to be instituted in Customer's own name (but solely at the expense of FiTECH or its vendors) legal action to prevent such action or threatened action; and Customer agrees to do all things and cooperate in all ways as may be reasonably requested by FiTECH to protect FiTECH's or its vendors' trade secret and property rights in and to the Application Software.

In the event of a violation of any of the foregoing provisions of this Section 2.3 by Customer, Customer acknowledges that FiTECH will not have an adequate remedy in money damages, and accordingly, shall be entitled to a temporary restraining order without notice, and thereafter to a temporary and permanent injunction against such breach without any requirement to post bond as a condition of such relief, all in addition to any other available legal or equitable remedies.

In the event of any breach by Customer or its agents, servants, or employees, which suffers or permits the Licensed Program or any of the components thereof to come into the hands of any unauthorized person, firm or corporation, Customer agrees, at its expense, to retrieve and deliver to FiTECH the Licensed Program or such components. If FiTECH elects voluntarily to take any steps to retrieve or recover the Licensed Program or components, (which FiTECH may, but shall be under no obligation to perform), then FiTECH shall be entitled to recover from Customer FiTECH's actual expenses and attorneys' fees incurred in efforts to retrieve the same.

## 2.4 INSTALLATION, TRAINING AND CONVERSION

FiTECH will assist Customer in the installation of the Licensed Programs and Other Software as and to the extend specified in Schedule C hereto. Customer agrees to reimburse FiTECH as specified in Schedule C, for reasonable travel and living expenses incurred by or on behalf of FiTECH and its personnel in furnishing any installation, conversion, and training services hereunder.

The installation, conversion, and training services described in Schedule C hereto should be accomplished in the time specified in said Schedule C if Customer fully performs its obligations hereunder and in connection herewith. If the installation services, the conversion services, or the training of

7

## FITECH STANDARD AGREEMENT
## Credit Union On-Line, Inc.

Customer's personnel requires more than the maximum number of days specified in Schedule C, FiTECH shall not be obligated to, but will, if requested by Customer, use reasonable efforts to provide additional installation, conversion, and/or training services. Customer agrees to pay FiTECH for such additional services at FiTECH's standard rates then in effect, and shall reimburse FiTECH as specified in Schedule C for reasonable travel and living expenses incurred by FiTECH and its personnel in providing such additional services. Except as provided in Schedule C hereto, Customer is solely responsible for conversion of Customer's existing files and data to a form compatible with the Application Software.

### 2.5 WARRANTY

As provided in Part 3 hereof, FiTECH shall support the Application Software as specified therein for so long as the Annual License Fee is paid and this Agreement has not terminated pursuant to Part 4 hereof. SUCH SUPPORT IS IN LIEU OF ALL WARRANTIES; ACCORDINGLY, FITECH MAKES NO WARRANTIES WITH RESPECT TO THE APPLICATION SOFTWARE, EXPRESSED OR IMPLIED, INCLUDING BUT NOT LIMITED TO IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND ALL SUCH WARRANTIES ARE EXPRESSLY DISCLAIMED. Customer is solely responsible for (i) determining the appropriate uses and limitations of the Application Software in Customer's operations, and (ii) the integrity of Customer's data and the backup of such data, and for balancing input data.

### 2.6 PATENT AND COPYRIGHT INDEMNITY

FiTECH will defend Customer against a claim that Licensed Programs or Licensed Materials furnished and used within the scope of the license granted hereunder infringe a U.S. patent or copyright, and FiTECH will pay resulting costs, damages and attorney's fees finally awarded, subject to the limitations on liability set forth herein, provided that (i) Customer promptly notifies FiTECH in writing of the claim; and (ii) FiTECH has sole control of the defense and all related settlement negotiations. However, if the costs and damages attributable to a claim of infringement of a U.S. patent may exceed such limitation of liability, Customer may elect to defend against the claim provided that FiTECH may fully participate in the defense and/or agrees to any settlement of such claim. If such claim has occurred or in FiTECH's opinion is likely to occur, Customer agrees to permit FiTECH at its option and expense, either to procure for Customer the right to continue using the Licensed Programs or Licensed Materials or to replace or modify the same so that they become non-infringing. If neither of the foregoing alternatives is reasonably available, Customer agrees, on one-month's written notice from FiTECH, to return or destroy the original and all copies of the Licensed Programs or Licensed Materials received from FiTECH and all copies thereof.

FiTECH shall have no obligation to defend Customer or to pay costs, damages, or attorney's fees for any claim based upon 1) use of other than a current unaltered version of the Licensed Programs if such infringement would have been avoided by the use of a current unaltered version of the Licensed Programs, or 2) the combination, operation, or use of any Licensed Programs or Licensed Materials furnished hereunder with non-FiTECH programs or data if such infringement would have been avoided by the combination, operation or use of the licensed program materials with other FiTECH programs or data.

### 2.7 ESCROW AGREEMENT

It is understood and agreed that this Agreement does not entitle Customer to access to the source code of the Licensed Programs; FiTECH agrees, however, to deposit the source code to the Licensed Programs in escrow with NationsBank, Greensboro, North Carolina. Upon the occurrence of any of the events listed below, Customer may make written request to NationsBank for the source code to the Licensed Programs licensed by Customers hereunder and, upon receipt of such written request from Customer and payment by Customer of the costs of reproduction and shipment, NationsBank shall deliver to Customer one copy of the source code in machine readable form.

The events entitling Customer to obtain the source code are:

(a) A petition in bankruptcy is filed by or against FiTECH and remains unstayed or unvacated for a period of thirty (30) days.

(b) FiTECH makes a general assignment for the benefit of creditors.

(c) FiTECH is adjudged insolvent by a court of competent jurisdiction.

(d) A custodian, trustee, or receiver of all or a substantial portion of the property of FiTECH is appointed.

## PART 3. MAINTENANCE AND SUPPORT SERVICES

### 3.1 TERM OF PART 3

This Part 3 shall be effective upon the date FiTECH or Customer begins to install the Application Software pursuant to the INSTALLATION, TRAINING, AND CONVERSION Section of Part 2 above (the "Effective Date"), and shall remain in force, except as otherwise provided herein, until termination in accordance with the provisions of Part 4 hereof.

### 3.2 SERVICES

In consideration of the Annual License Fee FiTECH shall provide to Customer the maintenance and ongoing services listed below in this Paragraph.

(a) Telephone Support. FiTECH will furnish to Customer a telephone number for use by Customer to obtain reasonable operator support and advice relating to the functions of the Licensed Programs and Other Software.

(b) Program Fix Service. If a Licensed Program as furnished and, without Customer modification, fails to function in accordance with the published specifications set forth in the Licensed materials hereto due to an error in the Licensed Programs and Customer has reasonably determined that the failure is not due to incorrect or defective data entry or operator performance, FiTECH will make a prompt and reasonable attempt to provide Customer with a program patch to correct such error or program around such error or malfunction. FiTECH shall have the right to verify the existence of any error reported by Customer and FiTECH shall have no obligation to correct any error or defect unless the error or defect can be recreated with the latest unaltered version of the Licensed Program. Error Verification shall be conducted at Customer's or FiTECH's place of business, as determined by FiTECH.

(c) Software Enhancements. FiTECH shall provide Customer with any Enhancement(s) to the Licensed Programs that FiTECH may acquire or develop and offer to other licensees of the Licensed Programs during the term of this Agreement. FiTECH will provide the Enhancements in such form and with accompanying instructions sufficient to enable Customer to install the Enhancements without the assistance of FiTECH. Unless FiTECH is requested by Customer to install the Enhancements, Customer shall be solely responsible for such installation. If requested by Customer, FiTECH will install the Enhancements at FiTECH's hourly rates then in effect plus reimbursement for reasonable travel and living expenses incurred by FiTECH and its personnel in providing such installation services. As used herein, the term "Enhancement" means any software development announced from time to time by FiTECH as an "Enhancement" to the Licensed Programs. Customer agrees that any Enhancement provided by FiTECH shall be held upon all of the terms and subject to all of the conditions contained in this Agreement.

(d) Exclusions. FiTECH shall not be required to provide any maintenance or support services occasioned by (1) neglect or misuse of the Licensed Programs or Equipment, (2) unauthorized alterations or modifications of the Licensed Programs, or (3) Customer's failure to maintain an adequate and knowledgeable staff trained by FiTECH in the use of the Application Software. All other programming services or assistance will be provided to Customer at the standard hourly rates of FiTECH in effect at the time services are rendered.

### 3.3 STANDARD OF PERFORMANCE

It is understood and agreed that the sole obligation of FiTECH under Part 3 of this Agreement is to provide the services described in Section 3.2 hereof. Customer shall bear sole responsibility for supervision, management, and control of the Licensed Programs, including, but not limited to, assuring proper audit controls and operation methods, and implementing sufficient procedures to satisfy its requirements for security, of data and files and accuracy of input and output.

## Credit Union On-Line, Inc.

### 3.4 INCREASE IN CHARGES

Upon not less than sixty (60) days prior notice to Customer, FiTECH may, in its sole discretion, increase the Annual License Fee specified on Schedule B hereof. Any such increase(s) in charges will be effective on the Annual License Fee due date first following the notice of increase.

### 3.5 WARRANTY

THE PROVISIONS OF THIS PART 3 SET FORTH ALL OF THE RIGHTS AND RESPONSIBILITIES BETWEEN FITECH AND CUSTOMER IN CONNECTION WITH MAINTENANCE AND ON-GOING SUPPORT SERVICES WITH RESPECT TO THE APPLICATION SOFTWARE. THEY TAKE THE PLACE OF AND SUPERSEDE ALL WARRANTIES, WHETHER OF MERCHANTABILITY, FITNESS, OR OTHERWISE.

## PART 4. TERMINATION

Subject to termination by FiTECH or Customer as herein provided, the terms of (a) license(s) with respect to the Application Software hereunder (the "License") shall commence on the Effective Date and continue thereafter until terminated as hereinafter provided and (b) the Maintenance and Support Services Agreement furnished pursuant to Part 3 hereof (the "Support Agreement") shall be three (3) years, but the Support Agreement shall be automatically renewed for one (1) year periods thereafter, unless FiTECH shall notify Customer, in writing, not later than ninety (90) days before the expiration of the initial or any renewal term hereof, that the Support Agreement shall not be renewed. Customer may terminate the License and Support Agreement at any time upon written notice to FiTECH. The License shall terminate immediately upon the termination of the Support Agreement. FiTECH shall have the right to terminate the License and Support Agreement upon the occurrence of any of the following events: (a) Customer shall not pay when due any sum owed hereunder (including the Annual License Fee) and such non-payment continues for more than thirty (30) days after demand by FiTECH, (b) Customer shall breach or fail to perform any provision of the CONFIDENTIAL DISCLOSURE provisions of this Agreement, (c) Customer shall breach or fail to perform any other provisions of this Agreement and the same is not cured within ten (10) days after notice of such breach or failure has been given by FiTECH to Customer, (d) Customer shall not implement the most recent version of the Application Software within ninety (90) days of the date such version is provided to Customer by FiTECH, or (e) Customer shall become insolvent or shall make an assignment for the benefit of its creditors or there shall be filed by or against Customer any bankruptcy, receivership, reorganization, or other like proceeding under any present or future debtor relief law or law relating to financial institutions. FiTECH'S right to terminate the License or the Support Agreement shall be exercised by a written notice given to Customer; and the termination of the License or the Support Agreement shall be effective immediately upon the giving of such notice. Any termination of the License or the Support Agreement shall be in addition to, and not in lieu of, any other rights or remedies available to FiTECH at law or in equity for or with respect to the occurrence upon which such termination was based; and all such rights and remedies shall be cumulative. Except as provided otherwise herein, no portion of the Initial License Fee or the Annual License Fee shall be returnable or refundable upon termination of the License or the Support Agreement, whether such termination is by Customer or FiTECH. Upon the termination of the License or the Support Agreement for any reason, Customer shall immediately cease all use of the Application Software, shall delete the Application Software from any computer equipment of Customer on which the Application Software is then installed, and shall return to FiTECH all tangible portions of the Application Software, delivered or disclosed to Customer by FiTECH under or in connection with this Agreement, and all modifications thereto, whether made by Customer or FiTECH, together with all copies thereof (other than copies which Customer warrants, in writing, it has destroyed) at any time made by Customer. The provisions of this Agreement relating to the confidentiality and nondisclosure of the Application Software shall survive the termination of this Agreement and the License granted hereunder.

## PART 5. GENERAL PROVISIONS

### 5.1 CUSTOMER OBLIGATIONS

In order to enable FiTECH effectively to perform its obligations hereunder Customer will:

(a) Within ten (10) days following the execution of this Agreement designate an individual as the sole representative of the Customer who shall be authorized to make decisions, approve plans and grant requests on behalf of the Customer in connection with the definition and installation of the Application Software.

(b) Provide to FiTECH free access to the Application Software and Customer's Equipment at all reasonable times for the purpose of allowing FiTECH to perform its obligations hereunder.

(c) Fully cooperate with FiTECH by, among other things, making available as reasonably required by FiTECH, management decisions and personnel in order that the work of FiTECH contemplated hereby may be properly accomplished.

(d) Maintain the Customer's Equipment, or cause the Customer's Equipment to be maintained, in proper working order during the term hereof.

(e) Exercise all due diligence in the performance of its obligations hereunder in connection with the installation and preparation for use of the Application Software.

(f) Maintain an adequate and knowledgeable staff to utilize the Application Software properly. Customer agrees to provide such training as may be required in FiTECH's reasonable judgment to those personnel of Customer who are integral to the efficient operation of the Application Software. FiTECH reserves the right to refuse Telephone Support to any of Customer's personnel who have not been trained by FiTECH.

### 5.2 REMEDIES

Customer's exclusive remedies with respect to the Products and Other Software shall be those provided by the respective Manufacturers of such Products and authors of the Other Software. Customer's exclusive remedy with respect to the Licensed Programs shall be FiTECH's obligation to provide a program patch or program around errors pursuant to Part 3 above. In the event that the remedies provided to Customer herein with respect to the Products, Other Software, or the Licensed Programs are deemed in a court of law to have failed in their essential purpose, the Customer's sole and exclusive remedy shall be the removal of the defective portion of the Product, Other Software, or Licensed Programs, as the case may be, and refund of the Initial License Fee paid by Customer to FiTECH hereunder in respect of such defective portion; and if all of the Licensed Programs shall have been removed as defective, then upon the removal and refund provided for herein, the License shall terminate automatically.

FiTECH will not be liable for any failure or delay in the performance of any of its obligations hereunder if such failure is due in whole or in part to any cause beyond FiTECH's control. IN NO EVENT WILL FITECH BE LIABLE FOR ANY INDIRECT, SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES ARISING OUT OF THIS AGREEMENT OR THE USE BY LICENSE OF THE PRODUCT, APPLICATION SOFTWARE, OR ANY SERVICE PROVIDED BY FITECH UNDER OR IN CONNECTION WITH THIS AGREEMENT; FiTECH's liability to Customer for any cause whatsoever, and regardless of the form of action and whether in contract or tort, shall in no event exceed the amounts paid by Customer hereunder for such System, Application Software, or Service.

### 5.3 CHANGES

In the event (i) the work to be performed by FiTECH incident to the definition, design, installation, or implementation of the Application Software, or any part thereof, or (ii) the type or capacity of Customer's Equipment and System Software shall be changed due to:

(a) erroneous, incomplete, or inaccurate information furnished to FiTECH by the Customer relating to the application, use, definition, or design of the Application Software in Customer's operations; or

(b) the volume of data generated by Customer's business operations to be processed by the Products and the Application Software shall substantially increase or be discovered to be greater than as originally determined; or

# Credit Union On-Line, Inc.

(c) changes requested by Customer in the capabilities, function, definition, or design of the Application Software or Products from that set forth herein and in the documentation furnished by FiTECH hereunder; then in any of such events, FiTECH, at its option, may either:

    (i) if agreed to by Customer, make such changes in the definition, design, installation, or implementation of the Application Software, Products, or any part thereof, as shall be required by any of the foregoing events and be paid for all work and additional equipment incident to such changes at FiTECH's standard rates and charges therefore then in effect, which rates and charges Customer agrees to pay as an additional Installation Fee or Purchase Price hereunder; or

    (ii) continue performance of this Agreement without regard to the occurrence of any of the foregoing events (making only such changes in the Application Software or Products required by such events as will not, in FiTECH's judgement, increase its cost of performance hereunder) and be relieved of all liability or responsibility for making or installing any other changes in the definition, design, installation, or implementation of the Application Software, Products, or any part thereof, required by any such events; or

    (iii) terminate this Agreement and the License granted hereunder and, upon return to FiTECH of all Equipment (in substantially the same condition as when delivered to Customer), System/Other Software, and Application Software theretofore delivered to Customer, refund to Customer any sums theretofore paid by Customer hereunder, less FiTECH's charges at its standard rates for work performed by FiTECH prior to such termination.

## 5.4 MISCELLANEOUS

Services provided by FiTECH to Customer outside the scope of this Agreement will be furnished at FiTECH's applicable time and material rates and upon terms then in effect and applicable to FiTECH's customers and licensees generally.

FiTECH shall neither use nor disclose to any other person, either during the term of this Agreement or thereafter, without Customer's written consent, any confidential information to which FiTECH is given access in the course of performance of its obligations hereunder. When used herein, the term "confidential information" shall mean records, account data, and other information which are not publicly available, relating to the business affairs of Customer and its customers, but shall not include any ideas, concepts, or techniques relating to the Licensed Programs which FiTECH develops as a result of its performance of this Agreement.

In the event FiTECH deems it necessary to enforce any of the provisions of this Agreement by or through an attorney at law, Customer shall pay all costs of such enforcement to FiTECH, including, without limitation, reasonable FiTECH attorney's fees incurred in such enforcement.

In the event of a delay in delivery or installation hereunder due to circumstance beyond FiTECH's control, FiTECH shall have the right to extend the date of delivery or installation for a reasonable period of time after the period of delay (but in no case for less than the period of delay) and shall have the right to apportion its materials and products among its customers in such manner as it may deem equitable. Customer is not relieved from accepting delivery or installation at the agreed upon price when the cause interfering with delivery or installation is removed. If delivery is in installments, delay in delivery of any installment shall not relieve Customer of its obligation to accept delivery of the remaining installments at the agreed upon price.

Neither this Agreement nor any right herein or in or to the Application Software may be assigned by the Customer without the prior written consent of FiTECH. This Agreement and all rights herein may be assigned by FiTECH without any prior consent or approval of Customer.

THIS AGREEMENT CONSTITUTES THIS ENTIRE AGREEMENT AND UNDERSTANDING BETWEEN FiTECH AND CUSTOMER CONCERNING THE SUBJECT MATTER HEREOF, AND CANCELS, TERMINATES, AND SUPERSEDES ALL PRIOR WRITTEN AND ORAL UNDERSTANDINGS, SALES AND PROMOTIONAL MATERIALS, AGREEMENTS, PROPOSALS, PROMISES, AND REPRESENTATIONS OF THE PARTIES RESPECTING ANY SUBJECT MATTER CONTAINED HEREIN. No representation or promise hereafter made by a party, nor any modification or amendment of this Agreement, shall be binding upon either party unless in writing and signed by Customer and accepted in writing by an authorized officer of FiTECH at its offices in Atlanta, Georgia or Greensboro, North Carolina.

Amounts payable to FiTECH hereunder are payable in full without deduction or setoff, and are net of all sales, use, or other taxes or duties. Customer shall duly and timely pay all taxes and duties, however designated, levied, or based upon amounts payable to FiTECH hereunder (exclusive of United States Federal, state or local taxes based upon the net income of FiTECH) for the ownership, use, or possession of the Products, System Software, and/or Application Software. Customer agrees to indemnify and hold FiTECH harmless from any such taxes or duties which any federal, state or local taxing authority requires FiTECH to pay. It shall be Customer's sole obligation after payment to challenge the applicability of any tax. Customer shall not deduct from payments due FiTECH hereunder any amounts paid or payable to third parties for taxes or duties, however designated, or any other sums.

Any notice required or permitted to be given under this Agreement shall be deemed given when reduced to writing and placed in the United States mail with first class and certified mail, return receipt requested, postage fully prepaid, and addressed to the other party at the addresses shown on the first page and third page of this Agreement or at such other addresses as such party from time to time may indicate by written notice given to the other party hereto.

The invalidity or unenforceability of any particular provision of this Agreement shall not affect the other provisions hereof, and this Agreement shall be construed in all respects as if such invalid or unenforceable provision had been omitted. This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia.

The heading of several divisions of this Agreement are for convenience only and shall not be construed to be a part of this Agreement.

Subject to all of the terms and conditions hereof, this Agreement inures to the benefit of and is binding upon the parties hereto and their successors and assigns.

The waiver of a breach of any provision of this Agreement, or of any condition or covenant must be in writing and shall be a waiver of any subsequent breach of the same or any other provision, condition, or covenant of this Agreement.



# SCHEDULES A-D OMITTED

Credit Union On-Line, Inc.

# FiTECH STANDARD AGREEMENT
## ADDENDUM 1
## MULTI CREDIT UNION PROCESSING

Page 8, Paragraph 2.2 License, first sentence is modified to read as follows:

"FiTECH grants to Customer, and Customer accepts, subject to and on the terms and conditions set forth below, a non-exclusive and not-transferable license to use the Application Software on Customer's Equipment (except as provided in Section 2.2(b) hereof) to process the data of Customer and the data of other credit unions, thrifts, savings banks, and cooperative banks whose such office headquarters are located in one of the following states (the "Territory"): Massachusetts, New Hampshire, Rhode Island, Vermont, Maine, Connecticut.

The following Paragraph 2.2(c) is added to the Agreement:

"Customer may provide Licensed Materials in printed form to financial institutions serviced by Customer provided that each such financial institution executes the form of Confidentlality Agreement attached hereto as Exhibit A."

# Credit Union On-Line, Inc.

## ADDENDUM 2
## MULTI CREDIT UNION MONTHLY LICENSE FEE

In addition to the Annual License Fee provided in Schedule B of this Agreement for single credit union processing, once the Customer begins processing the data of a credit union or credit unions or financial institutions other than the Customer's own data, a Multi Credit Union Monthly License Fee ("Multi Credit Union Monthly License Fee") will be calculated and charged on a monthly basis. The fee will be based on the number of members in each of the credit unions processed plus the number of customers in each financial institution processed. The Multi Credit Union Monthly License Fee will be calculated as follows:

| Number of Members/Customers | Per Member/Charge Per Month |
|---|---|
| 1-100,000 | |
| 101,000-200,000 | REDACTED |
| 200,001 and over | |

The per member charge per month will be based on the actual number of open members from credit unions and the actual number of customers with open accounts at financial institutions. The Monthly License Fee will be adjusted quarterly based on the actual number of members and customers processed as of the first day of each calendar quarter. The Monthly License Fee is payable quarterly in advance and is due on the first day of each calendar quarter.

The following list of credit unions are exempt from the calculations of the Monthly License Fee:

REDACTED

## Credit Union On-Line, Inc.

### ADDENDUM 3
### UPGRADES OF CPU

Customer acknowledges that the Application Software is licensed for use only on Customer's Equipment. In the event Customer upgrades the CPU, Customer agrees to pay FiTECH the difference (at the time of the upgrade) between the Initial License Fee for the Application Software on the CPU used prior to the CPU Upgrade and the Initial License Fee for the Application Software on the CPU used after the CPU upgrade.

The Initial License Fee for Customer to upgrade its A11-E22 to an A11-222 shall be hereby fixed at a price of REDACTED

In the event the Unisys A11-222 Upgrade Kit price is reduced before delivery, FiTECH agrees to pass along that reduction to Customer.

## Credit Union On-Line, Inc.

# ADDENDUM 4
# DESCRIPTION OF LICENSED MATERIALS

Included as part of the Initial License Fee, FiTECH will provide Customer with the following Licensed Materials:

(1) **Reference Manuals**

**In-house customer.** FiTECH will supply Customer two (2) free copies of the on-line reference manuals, one (1) free copy of the DP Coordinator Reference Manual, and one (1) free copy of the Computer Operator's Reference Manual. Customer may purchase additional manuals from FiTECH's Communications Department. At the time of each release, FiTECH's Communications Department will automatically send one update package for each manual that it has supplied to the Customer. The Customer will be billed for any update packages over those supplied with the base system. The Customer is expressly forbidden from copying the reference manuals.

**On-line customer.** FiTECH will supply Customer one (1) free copy of the on-line reference manuals and one (1) free copy of the DP Coordinator Reference Manual. Customer may purchase additional manuals from FiTECH's Communications Department. At the time of each release, FiTECH's Communications Department will automatically send one update package for each manual that it has supplied to the Customer. The Customer will be billed for any update packages over those supplied with the base system. The Customer is expressly forbidden from copying the reference manuals.

(2) **Training Manuals**

**On-line training (all customers).** Since train-the-trainer is the preferred method of training, FiTECH will supply Customer an on-line training manual for each staff person that the Customer sends to Atlanta for a train-the-trainer session, with a limit of six (6) free training manuals. Customer may purchase additional training manuals from FiTECH's Communications Department. At the time of each release, FiTECH's Communications Department will send a bulletin announcing the availability of a training update package, along with ordering and pricing information. It is the Customer's responsibility to return the order form in order to receive its training update packages. No free training update packages are supplied at the time of a release. Because of the train-the-trainer approach, the Customer is permitted to photocopy pages from the training manuals as needed in order to create suitable training materials for the employees that they train on their return to the Customer's office. Alternatively, Customer may purchase additional training manuals from FiTECH's Communications Department.

**Computer operations training (in-house Customer only).** One Computer Operations Training Manual is supplied for each operator that the Customer sends to Atlanta for training, with a limit of two (2) free training manuals. Customer may purchase additional training manuals from FiTECH's Communications Department.

## Credit Union On-Line, Inc.

# ADDENDUM 5

This Addendum 5 is attached to and forms a part of the Agreement dated <u>August 29</u>, 1994, between FiTECH Systems, L.P. and CREDIT UNION ON-LINE, INC.

The following additional terms, conditions, and understandings of the Agreement supersede the relevant provisions in the Standard Agreement and control the interpretation thereof:

1. Page 10, SECTION 3.4, INCREASE IN CHARGES is amended by adding the following sentence to the end of the section:

   "FiTECH agrees to not increase the Annual License Fee for the Application Software initially licensed as part of this Agreement prior to January 1, 1997. After January 1, 1997, FiTECH agrees to not increase the Annual License Fee more often than once every twelve (12) months, and shall limit any such increases to no greater than the increase in the current CPI as published by the U.S. Department of Labor for all Urban Consumers (CPI-U) based on the index value available twelve (12) months prior to the date FiTECH notifies Customer of such increase in the Annual License Fee and the index value available on the date of such notice."

2. Page 11 is amended by adding the following new section:

   "5.5 DISPUTES
   (A) Any controversy or claim, whether based on contract, statute, tort fraud, misrepresentation or other legal theory, related directly or indirectly to this Agreement or any of the Application Software or service, whenever brought, and whether between Customer and FiTECH, or any of FiTECH's or Customer's employees, agents, or affiliated businesses, will be resolved by arbitration in accordance with the terms of this Section 5.5, except that FiTECH reserves the right to seek injunctive relief for a breach or threatened breach by Customer of the Confidentiality provisions of Section 2.3 hereof or a breach or threatened breach of the provisions hereof of restricting and limiting Customer's use of the Application Software. The Federal Arbitration Act, 9 U.S.C. Sections 1 to 15, not state law, will govern the arbitrability of all claims.

   (B) A single arbitrator who is knowledgeable in business information and electronic data processing systems will conduct the arbitration under the then current rules and supervision of the American Arbitration Association (AAA). The arbitrator's decision and award will be final and binding and may be entered in any court with jurisdiction. The arbitrator will not have authority to award punitive or other non-compensatory damages to either party. The arbitration will be held in Atlanta, Georgia.

   (C) FiTECH and Customer will each bear its own attorney fees associated with the arbitration. FiTECH and Customer will pay all other costs and expenses of the arbitration as the rules of AAA provide.

   (D) If one party files a court action alleging claims subject to arbitration under this Section, and the other party successfully stays the court action and/or compels arbitration of the claims, the party filing the court action will pay the other party's costs and expenses, including attorney's fees.

## Credit Union On-Line, Inc.

## ADDENDUM 5 (Continued)

(E) Neither Customer nor FiTECH may bring a claim or action, regardless of form, arising out of or related to this Agreement after one (1) year from the date of the occurrence allegedly giving rise to the action, except that Customer or FiTECH may bring a claim up to two years after the cause of action accrues if Customer fails to timely pay FiTECH or the injured party cannot reasonably discover the basic facts supporting the claim within one year."

3. Page 11 is amended by adding the following new section:

### 5.6 CUSTOMER RESTRICTIONS

Neither party shall promote any software or services to customers of the other party without the prior written consent of that other party, except that through November 1, 1994, FiTECH reserves the right to promote its Data Center Services and accept an agreement for providing its Data Center Services to any of the following credit unions:

| | | | |
|---|---|---|---|
| Boston Edison Employees Credit Union | Boston, MA | MBTA Employees Credit Union | Jamaica Plain, MA |
| Boston Firefighters Credit Union | Dorchester, MA | New Bedford Credit Union | New Bedford, MA |
| Boston Gas Employees Credit Union | West Roxbury, MA | Turnpike Credit Union | Weston, MA |
| Boston Post Office Employees Credit Union | Boston, MA | University Credit Union | Boston, MA |
| Brookline Municipal Credit Union | Brookline, MA | | |
| City of Boston Credit Union | Boston, MA | | |

# EXHIBITS A-C OMITTED