UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CREDIT UNION ON-LINE, INC.,<br>    Plaintiff,<br><br>v.<br><br>OPEN SOLUTIONS, INC.,<br>    Defendant. | CIVIL ACTION NO. 04-12176 GAO |

## AMENDED COMPLAINT

**A.     Introductory.**

1.     Plaintiff Credit Union On-Line, Inc. ("CUOL") is a business organization with a principal place of business at Reservoir Place, 1601 Trapelo Road, Suite 240, Waltham, Middlesex County, MA 02451-7338.  CUOL files this Amended Complaint pursuant to the Order of this Court dated January 6, 2005.

1.1.     CUOL since at least 1994 has been in the business of supplying and supporting computer programs and software, software licenses, and data processing services to at least twenty-five credit unions and clients in Massachusetts and elsewhere. CUOL is owned in part by several such credit unions.

1.2.     The software programs, licenses, and systems purchased by CUOL after 1994 and through July, 2004 (together, "CUOL systems") are crucial to the ongoing operations of CUOL and to the credit unions who are CUOL customers.  CUOL credit unions provide daily banking and financial services for approximately 250,000 individual credit union members in

Massachusetts and other states. Those credit unions and their 250,000 members rely on CUOL systems.

2. Defendant Open Solutions, Inc., also known as OSI (hereinafter, "Open"), is a business organization with a principal place of business at 300 Winding Brook Drive, Glastonbury, CT 06033-4335, and with executive offices at 100 Western Boulevard, Glastonbury, CT 06033. Open is and at all relevant times was a direct competitor of CUOL in that Open as part of its business installs, supports, and markets software systems to credit unions and banks and competes with CUOL by offering data processing services to the same type of customers, in the same geographic areas.

3. CUOL by this action seeks declaratory and other relief as to specified acts or threats by Open against CUOL which have damaged and threaten to damage CUOL, the CUOL systems, and all of CUOL's customers and their members who use and rely on the CUOL systems.

**B.    The 2003 Supply Agreement And Related Undertakings.**

4. CUOL assets and financial standing as of September, 2004 derived primarily from successful and non-controversial operations and investments by CUOL pursuant to a 1994 Agreement with a nonparty, FiTECH ("FiTech"). CUOL after 1994 invested millions of dollars in licenses, software, and support for CUOL systems ("the systems") using FiTech as a sole service supplier and sole support provider. FiTech in 2000 assigned its obligations under the 1994 Agreement ("the 2000 Assignee").

4.1. Open, starting in July, 2003, asserted to be the successor to FiTech as to obligations of FiTech to CUOL. CUOL's primary need in July, 2003, as Open knew, was the

need for continuous and reliable support and licenses for the CUOL systems in place and to be sold to new CUOL customers.

4.2. Starting in July, 2003, when Open purported to become the supplier of CUOL, Open knew that CUOL and all of its customers would need a reasonable time for transition to a different supplier and for transition from Manager Gold systems to any substantially equivalent platform ("time for transition") if Open ever ended supply. A platform in this context refers to an operating system (e.g., Manager Gold) plus such modifications, installation, and support as necessary to permit daily use and access to (a) external data sources and (b) adequate working links to internal operations, systems, and data.

4.3. Open, to gain the business and trust of CUOL and other customers, repeatedly and publicly told CUOL and others that Open would support the systems so long as any customer, including CUOL, needed support. Open, to gain revenues and the business and trust of CUOL, promised in substance that Open would, if it ever became relevant, provide transition time for CUOL and its customers and would act in utmost good faith and would avoid a conflict of interest.

4.4. Open starting in July, 2003 offered to continue to provide CUOL goods and services needed for the CUOL systems which after 1994 were provided by FiTech or the 2000 Assignee. Open specifically offered:

(i) To provide CUOL all goods and services necessary to supply, use, and support of existing CUOL systems, including systems in place at CUOL customers and similar updated systems to be sold by CUOL after July, 2003.

(ii)     Open promised and agreed that Open would continue to supply the goods and services to CUOL and CUOL customers without interruption and without any direct or indirect efforts to damage CUOL or disrupt existing CUOL systems.

(iii)    Open offered and agreed not to take advantage of the fact that CUOL would rely on Open for exclusive supply of CUOL systems.

(iv)    Single-purchase order transactions would continue on the same commercial terms and pricing schedules in use prior to July, 2003.

(v)     Open promised and agreed it would, before any termination of supply, cooperate with CUOL to permit an orderly transition to any different sources of supply ("the time for transition"). Open by a writing dated September 30, 2003 assured CUOL that CUOL system software and licenses would be allowed to be used during any transition even if the 2003 Supply Agreement were to be terminated. Open knew by July, 2003 that if Open purported to terminate services without an adequate transition time, Open could destroy CUOL. An express and implied provision of the 2003 Supply Agreement was that Open would not unreasonably, unilaterally, or arbitrarily terminate the sole-source 2003 Supply Agreement in a manner harmful to CUOL or its customers.

(vi)    Open offered, and CUOL agreed, that Open would continue to provide the high quality and timely support that was provided by FiTech and by the 2000 Assignee after 1994.

4.5.    CUOL, in consideration for the 2003 agreement, agreed to pay at current prices. CUOL in addition expressly and impliedly agreed that so long as Open would assure termination time, CUOL would rely on Open as a sole source and would not use other readily-available sources.

4.6. Based on the described promises and representations by Open to CUOL, CUOL in late 2003 and 2004 invested substantial sums of money in hardware mainframes and new licensing agreements, goods and services solely for CUOL and for CUOL customers and used Open as a sole source of systems and support ("2003 Supply Agreement"). Starting in July, 2003 and through August, 2004, CUOL accepted the offer and representations that Open would act as the sole-source supplier in good faith. CUOL did so in reliance on the representations by Open set forth in this para. 4. The 2003 Supply Agreement as to time for termination and in other aspects was a partnership involving mutual promises of good faith going forward. CUOL would not have agreed, or used Open at all, without or if not for those partnership elements.

4.7. The described terms of the 2003 agreement were expressly and impliedly agreed by Open in July, 2003 and over the course of the last five months of 2003 and for the first eight months of 2004. The same terms were adopted and evidenced by and in the course of dealings between the parties. At no point during that time did Open request execution of an updated text of the 1994 FiTech writing or any writing to record the 2003 Supply Agreement.

4.8. CUOL relied on the listed Open promises and representations including partnership promises. CUOL in 2003 and prior to August 30, 2004 did not seek or use an alternative supplier. CUOL, by not doing so, acted in utmost good faith to protect Open under the 2003 Supply Agreement. It provided ongoing consideration to Open for the promise as to time for transition. If not for that justified reliance by CUOL on Open, CUOL at any time after July, 2003 could have approached, hired, and used alternative CUOL system suppliers and laid the groundwork for any transition to new systems and to a different supplier.

4.9. The exclusive dealings between the parties after July, 2003 were actual notice to Open that CUOL was relying on the utmost good faith of Open. Open knew that CUOL after July, 2003 justifiably relied on Open to perform the 2003 Supply Agreement and its promises as to time for transition. Open knew CUOL customers depended on the time for transition. Open after July, 2003 received all benefits, fees, and consideration due to it from CUOL. CUOL did business with Open to gain the benefits of the 2003 Supply Agreement, including time for transition, and to guarantee against interruption in supply, licenses, systems, and support if Open ever did seek to end the 2003 Supply Agreement. Open accepted those benefits and the reliance by CUOL. Open is estopped in 2004 to deny obligations under the 2003 Supply Agreement and is estopped to deny its promises as to time for transition or other elements involving partnering, mutual protection, and mutual good faith.

4.10. For about a year, from July, 2003 through July, 2004, the 2003 Supply Agreement functioned without dispute and was mutually beneficial.

4.11. The 2003 Supply Agreement does not ever include any express written or implied choice of law provision. It includes no explicit territorial restriction as to either party. It does not ever include any express or implied agreement to arbitrate. It does not include, except as permitted by prior practice, restrictions on solicitation. Those and certain other topics which are addressed in the 1994 text were not discussed starting in 2003 or, to the extent ever discussed, were not agreed and were not set forth in any writing.

**C.     Wrongdoing By Open.**

5. Open as a competitor of CUOL before July, 2003 was very familiar with CUOL's ongoing and successful business and favorable long-term prospects. Open prior to July, 2003

knew that CUOL customers primarily used software interface programs for the Manager Gold software platform. Manager Gold was purchased by CUOL and installed at and used by all CUOL customers starting in 1994 and after July, 2003, pursuant to the 2003 Supply Agreement.

5.2.    In July, 2003 in the first communications to CUOL Open expressed interest in acquiring CUOL. In July, 2004 after roughly one year of performance a principal of Open, Louis Hernandez, again mentioned and proposed to a principal of CUOL an acquisition at a price in the range of 1.5 times CUOL earnings, or roughly $6.75 million as of July, 2004. That was low. CUOL as of July, 2004 was in fact worth far more than that. CUOL told Open in July, 2004 that CUOL refused or declined to be acquired by Open at a price in that range.

6.    Commencing in late July, 2004 and thereafter through September, 2004, Open, without valid excuse or justification, delayed and refused to fill ordinary purchase and license orders placed by CUOL with Open pursuant to the 2003 Supply Agreement. CUOL for a time was not aware of Open's violation of obligations. CUOL paid Open in the aggregate more than $54,000 in cash for those orders. As of September 21, 2004 Open continued to delay delivery of CUOL systems and support despite the fact the license materials were overdue and were already paid for and were urgently needed by CUOL customers. Open as of September, 2004 and for years prior to that date used and sold a different, non-compatible platform, not Manager Gold, to its credit union customers.

6.1.    Open, pursuant to the 2003 Supply Agreement, is obligated to permit continued use of Manager Gold by licensees after any termination and is required to provide support in the time for transition even if the licensees plan to change to some other platform. Open by refusing to supply licenses for Manager Gold and by refusing to confirm that supply as of August 30, 2004

violated duties owed to CUOL under the 2003 Supply Agreement. Open did so to gain improper competitive advantage against CUOL and to cause economic damage to CUOL.

6.2. Open on August 30, 1994 without valid excuse or justification purported to declare CUOL in breach of a non-applicable and immaterial 1994 text. Open starting August 30, 2004 baselessly threatened to deprive CUOL and CUOL customers of services and already-purchased systems and of the benefit of valid, existing software licenses fully paid. The existing CUOL system customer licenses include software crucial to the operations of CUOL credit unions and their members.

7. Open by not filling ordinary CUOL orders in a usual timely manner after July, 2004, despite payment in full, acted in violation of the 2003 Supply Agreement. Open did so to improperly try to punish CUOL for not responding favorably to the Open interest in acquisition and because CUOL by July, 2004 would not agree to territorial restrictions which Open sought to impose on CUOL. Open, by cutting off supply, attempted to inflict economic damage on CUOL. Open did so with the intent or effect of causing damage. Open did so to discourage CUOL from lawful sales to former credit union customers of Open who approached CUOL to become CUOL customers because of dissatisfaction with Open.

8. Commencing August 30, 1994, Open asserts that CUOL should not do business with any credit union which is or was at any prior time a customer of Open. There is no such agreement between CUOL and Open as part of the 2003 Supply Agreement or later.

9. Commencing August 30, 2004, Open purported to complain to CUOL about a credit union customer in San Francisco. That customer in February, 2004 sought out CUOL and asked to do business with CUOL as to the CUOL systems. Open knew about that customer by

May, 2004 if not sooner. Open only after July, 2004 objected to CUOL selling a CUOL system to that customer. The objection by Open is contrary to 2003 Supply Agreement practice and relations of the parties prior to July, 2004.

10. Commencing November 30, 2004 Open purported to terminate the 2003 Supply Agreement and any other agreement. Open did so to increase the level of intensity of economic harm to CUOL systems. Open did so in violation of Open's obligations as to time for transition and contrary to Open's specific promises and representations. Open asserts termination will be effective March 1, 2005. CUOL, despite written inquiries to Open, is without information as to what, exactly, Open intends to do differently if anything as of or starting March 1, 2005. CUOL as of January 10, 2004 does not know, despite specific requests to Open, what acts or positions Open takes or will take starting March 1, 2005 purporting to affect CUOL systems or the licenses of CUOL customers or the daily banking needs of the 250,000 consumer members.

## COUNT I (Temporary Restraining Order And Preliminary Injunction).

11. CUOL repeats and hereby incorporates the allegations of each of the foregoing paragraphs.

12. If Open discontinues performance under the 2003 Supply Agreement or disables systems or interferes with or refuses support for existing CUOL systems or licenses, CUOL will be irreparably injured. The same is true for all CUOL credit union customers in Massachusetts and other states and for their 250,000 individual members. CUOL requests a temporary restraining order and injunctive relief so that the *status quo* under the 2003 Supply Agreement can be maintained until at least certain controversies between Open and CUOL are resolved so as to minimize injury to nonparties.

13. If Open continues to delay or refuse systems delivery and support under the 2003 Supply Agreement or if Open acts to disable, cancel, withdraw, or invalidate existing CUOL systems and licenses in any way, such conduct will irreparably damage CUOL and all CUOL credit union customers and all their 250,000 members in Massachusetts and elsewhere.

14. CUOL since 1994 and to the present has invested in and depends on Open to support the CUOL systems including Manager Gold and related support, services, and licenses. Those CUOL systems alone operate virtually all CUOL credit union customers. The reliance by CUOL has been ongoing and justified since 1994. CUOL in furtherance of that reliance from 2003 through the present has paid Open substantial fees and all amounts due to Open pursuant to the 2003 Supply Agreement.

15. The Open performance of the 2003 Supply Agreement and as to the time for transition affects and will affect at least twenty-five credit unions operating in Massachusetts and other states. Those credit unions serve at least or approximately 250,000 individual credit union members or customers.

16. CUOL requests, without requirement of a bond and until further Order of this Court, a temporary restraining order, preliminary injunction, and related relief including a permanent injunction that Open and all persons acting in concert with Open (i) are prohibited from any act to cancel, terminate, disable, or declare invalid installed CUOL systems in place of CUOL credit union customers as of September 1, 2004; (ii) shall not refuse or alter the manner or terms of Open performance of the 2003 Supply Agreement in ordinary course; (iii) shall not in ordinary course refuse to deliver, disable, or withhold from CUOL or CUOL credit union customers software, services, license, or capabilities of the type delivered by Open to CUOL and

CUOL credit union customers prior to July 1, 2004; and (iv) such further relief as is proper. CUOL requests and contemplates that a further Order will be proper, and no injunctive relief needed, as soon as CUOL is able to successfully transfer CUOL credit union customers, without operating systems interruption from Manager Gold, to a substantially equivalent system with professional support and services substantially equivalent to those provided by Open prior to July 1, 2004.

## COUNT II (Breach Of Contract).

17. CUOL repeats and hereby incorporates the allegations of each of the foregoing paragraphs.

18. By reason of the foregoing, Open is liable to CUOL for breach of the 2003 Supply Agreement. Commencing July 31, 2004, Open without excuse is wrongfully refusing to deliver product and is taking steps to limit the availability and support of Manager Gold, the primary platform used by CUOL and CUOL customers. Open thereby threatens to destroy the CUOL investment in Manager Gold programs from 1994 through September, 2004 and all related revenues.

19. To the extent services, support, and licenses for Manager Gold are changed or refused by Open, or Manager Gold is no longer sold or supported by Open, Open is and will be in breach of the 2003 Supply Agreement. Refusal of products and services by Open deprives CUOL of the core or essential component or value of the CUOL business since 1994. That ongoing value has been paid for by CUOL from and after 1994 in good faith pursuant to the 1994 text and the 2003 Supply Agreement.

20. Communications and acts by Open after July 31, 2004 as to limitation of or refusal of support or services to or for Manager Gold have directly and adversely impacted CUOL sales and marketing. The same communications and acts by Open have interfered with and delayed efforts by CUOL to plan for 2005 operations and to contract with 2005 vendors and other suppliers.

21. CUOL on or about August 15, 2004 gave written notice to Open of the ongoing Open violations of obligations. Open has not timely cured the violations. Open failed to do so despite written notice. Unless and until Open performs as required under the 2003 Supply Agreement, Open is in breach of the 2003 Supply Agreement and is liable to CUOL for actual damages, injunctive relief, costs, attorneys' fees, and other relief as is proper.

## COUNT III (Declaratory Judgment).

22. CUOL repeats and hereby incorporates the allegations of each of the foregoing paragraphs.

23. By reason of the foregoing, justiciable controversies have arisen between CUOL and Open. Those controversies are appropriate for judicial resolution and determinations as to the rights and obligations of each of the parties under the 2003 Supply Agreement or otherwise and as to rights and obligations of the parties going forward. CUOL requests declaratory and other relief as to the following controversies or issues: (i) whether Open is obligated to continue support and services for a reasonable time under the 2003 Supply Agreement; (ii) whether Open is obligated by the 2003 Supply Agreement and by justified reliance of CUOL until further Order to support and service the Manager Gold software platform in the ordinary course for benefit of CUOL and CUOL customers with provisions for reasonable transition time (preferably two years)

if Open will be allowed to terminate the 2003 Supply Agreement; (iii) whether Open is obligated by prior practice to permit under the 1994 Agreement case-by-case exceptions to geographic limitations and to otherwise perform as FiTech performed; and (iv) such other and further declarations as are proper.

24.     Unless and until Open performs as required under the 2003 Supply Agreement, Open is in breach of the 2003 Supply Agreement and is liable to CUOL for actual damages, injunctive relief, costs, attorneys' fees, and other relief as is proper.

## COUNTS IV, V (Interference With Contractual, Advantageous Relations).

25.     CUOL repeats and hereby incorporates the allegations of each of the foregoing paragraphs.

26.     By reason of the foregoing, and without regard as to the 2003 Supply Agreement, Open has acted improperly and in violation of obligations to CUOL to deprive CUOL of the benefits of the 1994 Agreement as to which Open asserts to be a party. Open is thereby depriving CUOL of the benefit of substantial economic reliance, including fees paid to obligors under the 1994 Agreement. Any change or changes in performance by Open in 2004 are without excuse or justification, and are conducted for improper purposes and by improper means. Those changes have interfered with and will, until ended, continue to interfere with the advantageous and contractual relations of CUOL with CUOL customers and vendors, including vendors necessary for ongoing support of existing CUOL customers.

27.     Unless and until Open performs as required under the 2003 Supply Agreement, Open is in breach of the 2003 Supply Agreement and is liable to CUOL for actual damages, injunctive relief, costs, attorneys' fees, and other relief as is proper.

## COUNT VI (Good Faith And Fair Dealing).

**28.** CUOL repeats and hereby incorporates the allegations of each of the foregoing paragraphs.

**29.** Open is in violation of the covenant of good faith and fair dealing implied in every contract in Massachusetts, including the 2003 Supply Agreement.

**30.** Unless and until Open performs as required under the 2003 Supply Agreement, Open is in breach of the 2003 Supply Agreement and is liable to CUOL for actual damages, injunctive relief, costs, attorneys' fees, and other relief as is proper.

## COUNT VII (Unfair Or Deceptive Trade Practices: Chapter 93A).

**31.** CUOL repeats and hereby incorporates the allegations of each of the foregoing paragraphs.

**32.** At all relevant times CUOL and Open have been engaged in trade or commerce. CUOL is based in and operates primarily in Massachusetts. Open's misconduct directly injures CUOL in Massachusetts and elsewhere.

**33.** The described representations, promises, acts, omissions, and threats by Open in and after July, 2003 are unfair or deceptive within the fair trade protection statute of M.G.L. c. 93A. The same facts are actionable under trade protection statutes, if any, of Connecticut or other states if any other state law is deemed to control.

**34.** Open is liable to CUOL for all damages available under the state trade statutory schemes prohibiting unfair or deceptive acts in trade or commerce.

**35.** Unless and until Open performs as required under the 2003 Supply Agreement, Open is in breach of the 2003 Supply Agreement and is liable to CUOL for actual damages, injunctive relief, costs, attorneys' fees, and other relief as is proper.

### COUNT VIII (Unfair Competition).

**36.** CUOL repeats and hereby incorporates the allegations of each of the foregoing paragraphs.

**37.** By reason of the foregoing, Open is liable to CUOL for unfair competition, including deliberate violation of agreed terms to wrongfully obtain economic benefit for Open and to damage CUOL and CUOL's ability to compete. The conduct by Open includes advance collateral competitive ends, wrongful acts or refusals to act designed to obtain collateral economic advantage or to economically injure CUOL or for strategic purposes of Open, or to impair CUOL and others from engaging in the free and fair conduct of commerce or fair market prices. Open without justification has acted to improperly restrict CUOL and other persons in the fair conduct of business in accordance with free and informed judgment.

38. Unless and until Open performs as required under the 2003 Supply Agreement, Open is in breach of the 2003 Supply Agreement and is liable to CUOL for actual damages, injunctive relief, costs, attorneys' fees, and other relief as is proper.

### COUNTS IX, X (Negligent Misrepresentation; Intentional Misrepresentation).

39. CUOL repeats and hereby incorporates the allegations of each of the foregoing paragraphs.

40. By reason of the foregoing, Open is liable to CUOL for negligent and intentional misrepresentations. Those misrepresentations involved material facts as to the 2003 Supply

Agreement. The misrepresentations were justifiably relied on by CUOL in entering into the 2003 Supply Agreement and after July, 2003 CUOL was thereby harmed. The relevant misstatements and misrepresentations were made by Open with knowledge of falsity or reckless disregard for truth, or with negligent disregard for truth. The misrepresentations caused CUOL to incur substantial actual damages. Open as a result is liable to CUOL for all actual damages, interest, costs, attorneys' fees, and other relief as appropriate.

### COUNT XI (Breach Of Fiduciary Duty).

41.  CUOL repeats and hereby incorporates the allegations of each of the foregoing paragraphs.

42.  By reason of the foregoing, Open is liable to CUOL for violations of fiduciary obligations. Open is thereby liable for actual damages in amounts to be determined, plus interest, costs, attorneys' fees, and other relief as appropriate.

43.  By reason of the foregoing Open undertook, as to CUOL, starting in July, 2003, the obligations of a fiduciary including the obligations of a joint venturer or partner with respect to any purported termination of the sole supply of goods and services by Open and with respect to agreements and representations by Open on that subject which were made as part of the 2003 Supply Agreement or otherwise. Open as a result owes and continues to owe fiduciary obligations and the duty of utmost good faith to CUOL and CUOL customers as to any purported termination affecting or damaging CUOL systems in place and as to any termination affecting or purported termination affecting the ongoing business of CUOL as to credit union customers.

44.	Open is in violation of its fiduciary and related obligations owed to CUOL and is therefore liable for monetary damages, an accounting, a constructive trust, and other relief as appropriate, including attorneys' fees and costs.

### COUNT XII (Promissory Estoppel).

45.	CUOL repeats and hereby incorporates the allegations of each of the foregoing paragraphs.

46.	By reason of the foregoing, if the 2003 Supply Agreement as described herein is found not to be enforceable as a contract in all respects, the described representations, promises, and undertakings by Open are actionable and have caused CUOL to engage in substantial economic and strategic reliance.  That reliance continued from July, 2003 through at least November, 2004.  That reliance included justifiable conduct by CUOL not to use an alternative source of supply.  CUOL acted in good faith to provide Open the full benefit of the promises by Open accepted by CUOL as to time for transition.

47.	By reason of the foregoing, Open is liable to CUOL pursuant to promissory estoppel and is thereby liable to CUOL for substantial amounts of actual damages to be determined, and is liable to CUOL for all actual damages, injunctive relief, costs, attorneys' fees, and other relief as is proper.

### COUNTS XI, XII (Constructive Trust; Accounting).

48.	CUOL repeats and hereby incorporates the allegations of each of the foregoing paragraphs.

52.	By reason of the foregoing, CUOL and the persons represented by CUOL are entitled to an Order imposing a constructive trust on all sums earned by Open by reason of

wrongful conduct plus interest thereon, and an Order requiring an accounting, at the sole expense of Open, of all sums, monies, funds, and assets disposed of or earned in credit union sales after July, 2003 by reason of the 2003 Supply Agreement or the promises as to the time for transition or by reason of violations of duty by Open as to CUOL as its supply partner.

## **JURY DEMAND.**

*CUOL hereby requests jury trial of all issues and claims so triable.*

**REQUEST FOR RELIEF.**

WHEREFORE, plaintiff CUOL requests:

1. Entry of judgment for all monetary damages, plus interest, costs, and other relief as appropriate, including attorneys' fees to the full extent permitted; and

2. Entry of a temporary restraining order, preliminary injunction, and other equitable relief, plus other relief as appropriate.

|  |  |
|---|---|
|  | Plaintiff,<br>CREDIT UNION ON-LINE, INC.<br>By its attorneys, |
|  |       S/Paul G. Boylan<br>Paul G. Boylan, BBO No. 052320<br>David M. Thomas, BBO No. 496100<br>DONOVAN HATEM LLP<br>Two Seaport Lane<br>Boston, MA  02210 |
| Dated:  January 26, 2005 | 617-406-4500 |

Certificate of Service

The undersigned counsel for plaintiff CUOL hereby states that on this date he served the foregoing **Amended Complaint** by e-mail filing to the Clerk, D.Mass., and by e-mail to counsel for defendant Open, Daniel J. Cloherty, Dwyer & Collora, LLP, 600 Atlantic Avenue, Boston, MA  02210-2211.

Dated:  January 26, 2005                                    S/Paul G. Boylan

24805.0//00890793.